NOT RECOMMENDED FOR PUBLICATION
File Name: 17a0415n.06

No. 16-2324

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| In re: LSC LIQUIDATION, INC., | ) | |
| | ) | **FILED** |
| Debtor. | ) | Jul 18, 2017 |
| _____ | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| GENE R. KOHUT, | ) | |
| | ) | ON APPEAL FROM THE UNITED |
| Appellant, | ) | STATES BANKRUPTCY COURT |
| | ) | FOR THE EASTERN DISTRICT |
| v. | ) | OF MICHIGAN |
| | ) | |
| UNITED HEALTHCARE INSURANCE | ) | OPINION |
| COMPANY, | ) | |
| | ) | |
| Appellee. | ) | |

BEFORE:     SUHRHEINRICH, BATCHELDER, and STRANCH, Circuit Judges.

**JANE B. STRANCH, Circuit Judge.**  In this bankruptcy action, assets of a debtor company were sold to a buyer.  The buyer retained many of the debtor's employees, who were covered by health insurance policies provided by United Healthcare, the appellee.  As part of an effort to recover premium payments, the liquidating trustee—appellant here—challenges the assignment of contracts governing those health insurance policies.  The question before us is whether those contracts were assigned to the buyer under 11 U.S.C. § 365.  Based on our precedent, the bankruptcy court did not abuse its discretion in amending a sale order to include the policies. We therefore **affirm** the order of the bankruptcy court.

## I.     BACKGROUND

### A.     Factual History

In 2014, Lee Steel Corporation, the Debtor here, and United Healthcare entered into contracts for United to provide health insurance to Lee Steel's employees.[1] On April 13, 2015, Lee Steel[2] filed for chapter 11 bankruptcy relief. A creditors' committee (Committee) was established to advocate for the interests of unsecured creditors. United requested to receive notice in the bankruptcy case. Lee Steel filed a proposal to establish bidding procedures to sell its assets, including a facility in Wyoming, Michigan. United received notice under 11 U.S.C. § 365 that its health insurance policies with Lee Steel were eligible to be assumed and assigned. On July 31, 2015, Lee Steel filed a motion to sell substantially all of its assets to the highest bidder, specifying that the buyer would likely hire certain employees and that "many executory contracts will be assumed" under 11 U.S.C. § 365. Attached to the motion was a Sale Agreement in the form of a proposed order. On August 12, the bankruptcy court entered an Order in the form proposed, granting the motion authorizing the sale of debtor's Wyoming, Michigan, facility to the buyer, Union Partners I, LLC. The Order incorporated the Sale Agreement that had been submitted by the parties, adding only a few paragraphs that are not relevant here. Paragraph 22 of the Sale Agreement and Order specified that the Sale Agreement could be "modified . . . by agreement of [Lee Steel] and [Union Partners], without further action or order of the Court; provided . . . any such . . . modification . . . is not material and substantially conforms to, and effectuates, the Sale Agreement," and authorized the court to approve material

---

[1] The factual basis is found in the designated bankruptcy record filed in the district court, (R. 3), which consists of portions of the bankruptcy court record that the parties designated as relevant to this appeal.

[2] Lee Steel Corporation, now known as LSC Liquidation, Inc., was joined in the bankruptcy petition by affiliates Taylor Industrial Properties, L.L.C. and 4L Ventures, LLC. Because Lee Steel was the relevant actor for most of the events described here, we refer to the debtors collectively as "Lee Steel."

modifications upon motion. (R. 3, PageID 41-42, 70) (emphasis omitted)  Lee Steel and Union Partners closed on the sale of the Wyoming facility on September 18.

On September 29, 2015, Union Partners sent United a letter informing United of a name change—Union Partners had created Lee Steel Holdings LLC to operate the Wyoming facility—and a new tax identification number for the healthcare policies.  United processed the changes, but did not recognize that the letter was a result of the bankruptcy sale.  On November 24, the bankruptcy court confirmed Lee Steel's liquidation plan.  The liquidation plan rejected all executory contracts that had not been assumed or assigned; the healthcare insurance policies were not listed as contracts that had been assumed or assigned.

United had previously asked Union Partners whether the health insurance policies would be assumed and assigned, but had not received a definitive response.  United therefore informed Lee Steel's counsel that United would "cease providing insurance coverage under the group health insurance policies . . . as of 12/1/15."  On November 30, 2015, Union Partners contacted United after receiving notice of the termination of health insurance coverage for employees at the Wyoming facility.  Union Partners informed United that Union Partners intended for the health policies to be assumed and assigned as part of the bankruptcy sale so coverage could continue. In accordance with the policies, Union Partners continued to pay premiums and United continued to provide healthcare insurance.  On December 3, Lee Steel, United, and Union Partners entered into a letter agreement stating that all of the parties agreed that the health insurance policies had been assumed by the debtor and assigned to the buyer at the closing on September 18, 2015.  The parties regarded the inclusion of the policies as falling under Paragraph 22 of the Sale Agreement and Order that allowed non-material modifications without court action.

On December 15, 2015, the Committee sent United a demand letter seeking $211,813 in allegedly preferential transfers under 11 U.S.C. § 547—the amount Lee Steel had paid to United as premiums in the months before the bankruptcy petition was filed. The Committee had previously sent a demand letter on November 25, 2015, but the first letter was sent to a lockbox for payments and never made it to the appropriate department of United. On January 14, 2016, the Committee filed an adversary proceeding against United seeking recovery of the pre-petition payments. The adversary proceeding is currently stayed pending the outcome of this appeal because pre-petition payments are generally not recoverable under 11 U.S.C. § 547 if the policy contracts were assumed and assigned under § 365. *See In re Superior Toy & Mfg. Co., Inc.*, 78 F.3d 1169, 1174 (7th Cir. 1996) (stating "Section 547 and § 365 are mutually exclusive avenues for a trustee.").

## B.     Procedural History

On February 26, 2016, United filed in the bankruptcy court a motion to amend the Sale Order to clarify that the health insurance policies were assumed and assigned with the sale of the Wyoming facility. The Committee objected. The bankruptcy court granted the motion under Rule 60(a) and 60(b) of the Federal Rules of Civil Procedure, finding that the parties had intended for the policies to be assumed and assigned and that amending the Order would "make the judgment or record speak the truth."

The liquidating trustee (Trustee), who is now vested with all claims and causes of action of the Committee, appealed the bankruptcy court's decision to the district court. The district court affirmed on the grounds that the bankruptcy court did not abuse its discretion in granting the motion under Rule 60(a). The Trustee subsequently appealed to this court.

## II.  ANALYSIS

### A.  Jurisdiction and Standard of Review

This court has jurisdiction under 28 U.S.C. § 158(d)(1) over appeals of final orders from district courts that have reviewed bankruptcy court decisions.  We review the decision of the bankruptcy court "rather than the intermediate decision of the district court."  *Lowenbraun v. Canary* (*In re Lowenbraun)*, 453 F.3d 314, 319 (6th Cir. 2006).  Generally, findings of fact are reviewed for clear error and conclusions of law are reviewed de novo.  *Id.*  We review the grant of relief under Rule 60 for abuse of discretion.  *Pruzinsky v. Gianetti (In re Walter)*, 282 F.3d 434, 440 (6th Cir. 2002).  An abuse of discretion occurs when a court "commits a clear error of judgment, such as applying the incorrect legal standard, misapplying the correct legal standard, or relying upon clearly erroneous findings of fact."  *Yeschick v. Mineta*, 675 F.3d 622, 628 (6th Cir. 2012) (quoting *Auletta v. Ortino (In re Ferro Corp. Derivative Litig.)*, 511 F.3d 611, 623 (6th Cir. 2008)).

### B.  Relief under Rule 60(a)

Rule 60(a) allows a court to "correct a clerical mistake or a mistake arising from oversight or omission whenever one is found in a judgment, order, or other part of the record."  Fed. R. Civ. P. 60(a).  The rule is applicable in bankruptcy proceedings through Bankruptcy Rule 9024.  "Rule 60(a) applies to errors of transcription, copying, or calculation, and not to a fundamental failure of discovery or notification."  *Olle v. Henry & Wright Corp.*, 910 F.2d 357, 363 (6th Cir. 1990) (quoting *Bershad v. McDonough*, 469 F.2d 1333, 1336 (7th Cir. 1972)).  "The need to consider evidence outside the record is some indication that the error involved is not merely clerical."  *Id.*  Rule 60(a) is not the appropriate avenue for relief when "substantial rights of the parties are involved and there was no mere clerical mistake or oversight by the

court." *Olle*, 910 F.2d at 364. "Clerical mistakes include those made by judges as well as ministerial employees." *In re Walter*, 282 F.3d at 440.

In the *Walter* case, a bankruptcy court was asked to clarify whether a party retained a right that, by the terms of a previous order, had been released. *Id*. at 437-38. The transcript of the previous motion hearing made clear that the bankruptcy court had intended to excise the language releasing the right, but had overlooked a second paragraph. *Id*. We held that Rule 60(a) was the appropriate avenue for relief because the bankruptcy court had intended to remove the language, but had made an oversight that the Rule 60(a) order corrected. *Id*. at 442.

Here, the errors and oversights were not clerical mistakes made by judges or ministerial employees. Instead, the parties and their counsel failed to make the Sale Agreement accurately reflect their intention to include the health insurance policies as contracts that were assumed and assigned in the sale. Unlike in *Walter*, the bankruptcy court here is not asked to correct its own error—its Sale Order approved the Sale Agreement just as the court intended to do at the time— but is instead asked to correct a substantive error made by the parties. Modification under Rule 60(a) is therefore not appropriate here.

### C.     Relief under Rule 60(b)

Rule 60(b) authorizes courts to provide relief from a final judgment, order, or proceeding. Fed. R. Civ. P. 60(b).[3] A court may provide relief for enumerated reasons, including "mistake, inadvertence, surprise, or excusable neglect." Fed. R. Civ. P. 60(b)(1). A motion based on these reasons "must be made within a reasonable time . . . no more than a year after the entry of the judgment or order or the date of the proceeding." Fed. R. Civ. P. 60(c)(1). Courts can also

---

[3] The Trustee argues that United is not "a party or its legal representative" that has standing to properly bring a Rule 60(b) motion. However, this is an issue of statutory—not constitutional—standing. As such, the argument was forfeited because the Trustee failed to raise it below. *See Bilyeu v. Morgan Stanley Long Term Disability Plan*, 683 F.3d 1083, 1090 (9th Cir. 2012) (finding a statutory standing argument waived because it was not raised before the district court).

provide relief for "any other reason that justifies relief." Fed. R. Civ. P. 60(b)(6). Motions based on the catchall (b)(6) clause do not face a specific timing limitation, *see* Fed. R. Civ. P. 60(c)(1), but must be filed within a reasonable time, *Olle*, 910 F.2d at 365.

Relief under Rule 60(b)(6) is only appropriate "in exceptional or extraordinary circumstances which are not addressed by the first five numbered clauses of the Rule." *Id.* (quoting *Hopper v. Euclid Manor Nursing Home, Inc.*, 867 F.2d 291, 294 (6th Cir. 1989)). In *Olle*, an auctioneer erroneously reported to a bankruptcy trustee that a completed sale did not include the good will and trade name of the debtor. *Id*. at 360. Approximately two years after the auction, the buyer—who in fact had purchased the good will and trade name in the sale— filed a motion under Rule 60 to amend the sale order. *Id*. *Olle* held that the catchall reason in clause (b)(6) is mutually exclusive from the grounds in clause (b)(1)—mistake, inadvertence, surprise, and excusable neglect. *Id*. at 366. And the error in *Olle* was based on an "error in reporting," *id*. at 363, which seems to fit into the first clause, but relief under that clause was blocked by the one-year limitation, Fed. R. Civ. P. 60(c)(1). We remanded to the district court to determine whether the motion to correct was "within the proper purview of Rule 60(b)(6) and was filed within a 'reasonable time.'" *Id*. at 366.

Courts consider three factors when determining whether to grant relief under Rule 60(b)(1): "(1) culpability—that is, whether the neglect was excusable; (2) any prejudice to the opposing party; and (3) whether the party holds a meritorious underlying claim or defense." *Yeschick*, 675 F.3d at 628 (quoting *Flynn v. People's Choice Home Loans, Inc.*, 440 F. App'x 452, 457-58 (6th Cir. 2011)). We have suggested that an attorney error would fit within the ambit of Rule 60(b)(1). *In re Walter*, 282 F.3d at 440 (disagreeing with the district court's assessment that "the problem here was simply a matter of attorney error, such that Rule 60(b)(1)

applied," and instead finding a "mistake of counsel *and* the bankruptcy court's own oversight" to justify relief under Rule 60(a)).

In this case, the bankruptcy court found that a mistake was made when the healthcare policies were not included in the Sale Agreement and Order as contracts that had been assumed and assigned to the buyer. The Rule 60(b)(1) motion was filed less than a year after entry of the Sale Order, so *Olle's* analysis of Rule 60(b)(6) is inapplicable. The bankruptcy court applied Rule 60(b)(1), examined its categories for relief, and made findings to cover—though not explicitly referencing—the factors employed in *Yeschick.* It noted that: neglect was excusable because the parties were all "operating on the assumption that there was going to be a contract in place" even though "the case was in flux," and any subsequent modification could be completed under Paragraph 22 of the Sale Agreement and Order; the Trustee did not suffer prejudice because he would not have had standing to object to the assumption and assignment of the contracts in the Sale Agreement and Order; and, "all the affected parties have acted in reliance on the assumption of the contract" that allowed for employees to receive continuous healthcare coverage.

The Trustee argues that the bankruptcy court abused its discretion because relief under Rule 60(b) is binary: a court can either vacate an order or it can leave the order in place. He points to the language of the rule: "the court may relieve a party or its legal representative from a final judgment, order, or proceeding," Fed. R. Civ. P. 60(b), and claims that a court can only relieve a party by vacating an order. But the rule does not use the word "vacate," and instead "gives the district court a grand reservoir [of] equitable power to do justice in a particular case." *Radack v. Norwegian Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963) (quoting Moore's Fed. Practice 308 (1st ed. 1950)). Consequently, "the rule should be liberally construed when

substantial justice will thus be served." *Id.* We have implied that modifying an order can be an appropriate form of relief under Rule 60(b) when the motion is brought within the one-year limitation period. *In re Walter*, 282 F.3d at 440; *Olle*, 910 F.2d at 365-66. The bankruptcy court found this case to be appropriate for modification of the Sale Agreement and Order under Rule 60(b), and we agree.

The Trustee also argues that language in *Charter Township of Muskegon v. City of Muskegon* suggests affirmative relief is not available under Rule 60. 303 F.3d 755, 762 (6th Cir. 2002) ("The jurisdiction available for a Rule 60 proceeding will not suffice for anything more than relief from the judgment, because Rule 60 does not authorize a court to grant any affirmative relief.") (quoting Moore's Fed. Practice § 60.61 (3d ed. 1997)). But the court in *Muskegon* was discussing the extent of jurisdiction available under Rule 60, not placing a limit on the equitable powers of the court. *Id.* at 762-63. This is evidenced by our discussion of Rule 60 generally. The authority of the bankruptcy court to modify the Sale Agreement and Order under Rule 60(b)(1) is also supported by the universal recognition that a court may modify an order under Rule 60(a) when appropriate. *See In re Walter*, 282 F.3d at 440. The bankruptcy court's action was not an abuse of discretion.

## III. CONCLUSION

The bankruptcy court did not abuse its discretion in modifying its Order under Rule 60(b) to clarify that health insurance policies were assumed and assigned in the sale. Modification under Rule 60(b)(1) was appropriate because the motion was filed within one year of entry of the Sale Order being modified and the court properly exercised its discretion to make the amendment after weighing the relevant factors. Accordingly, we **affirm** the order of the bankruptcy court.